## BUCHANAN v. BURRAGE.
### Patent Appeal No. 2359.

Court of Customs and Patent Appeals.
May 28, 1930.

H. C. Bierman, of New York City, for appellant.

Odin Roberts, of Boston, Mass., for appellee.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

BLAND, Judge.

Appellant has appealed from the decision of the Board of Appeals, awarding priority to the party Burrage upon the following counts in interference:

"1. A rubber accelerator comprising a mixture of diphenylguanidine and ditolylguanidine.

"2. A rubber accelerator comprising a mixture of diphenylguanidine and ditolylguanidine, the melting point of said mixture being lower than the melting point of the major constituent.

"3. A rubber accelerator comprising a mixture of diphenylguanidine and ditolylguanidine, the melting point of said mixture being lower than the melting point of either constituent.

"4. A rubber accelerator comprising a mixture of diphenylguanidine and ditolylguanidine, and having an accelerating value approximately equal to that of ditolylguanidine."

Buchanan filed application for a patent on a rubber accelerator and method of making the same and after due proceedings obtained a patent, No. 1,593,385, on July 20, 1926. Later the primary examiner suggested that an interference should be declared on the subject-matter of claim 1. The Burrage application had been on file in the Patent Office prior to the filing of the application of Buchanan. Burrage copied 4 claims of the Buchanan patent, and interference was declared thereon. Buchanan moved to dissolve on the theory that Burrage could not make the claims. The law examiner denied the motion. His view was sustained by the Examiner of Interferences and by the Board of Appeals.

The invention in issue, as disclosed in the Buchanan patent, consists of a mixture of two compounds, namely, DPG and DOTG, both of which had been known and used as rubber accelerators. Buchanan claims to have discovered, first, that mixtures of these two substances in various proportions are mutually soluble; second, that the melting points of these mixtures differ materially from the melting points of the individual constituents; third, that a eutectic mixture containing approximately equimolecular parts of the two substances had a relatively low melting point, much lower than the melting points of either of the two constituents; fourth, that these mixtures have high accelerating values, and particularly the eutectic mixture which has an activity equal to that of DOTG.

The object of the claimed invention is to enable the rubber manufacturer to use with good results larger quantities of the cheaper accelerator and thus reduce manufacturing costs.

Appellee filed no brief and made no appearance in this court.

In the decision of the Board of Appeals is found an apt statement of the case, and we can do no better than to copy it:

"Count 1 is identical with claim 16 of Burrage which is one of his original claims and it is obvious, therefore, that he can make this claim.

"Count 2 specifies that the mixture has a melting point lower than that of the major constituent. In the Burrage application on page 4, lines 4–10, the proportions of the mixture, which appear to apply generally to all the described ingredients, were stated as two parts of the slower and less expensive constituent and one part of the more active and more expensive one. Applying these proportions to the specific substances of the claims, this would mean 33⅓% of diphenylguanidine and 66⅔% of ditolylguanidine. If the ditolylguanidine is the major constituent, count 2 would, according to the diagram in the drawing of Buchanan's patent, cover all mixtures of the specified substances and if the diphenylguanidine is the major constituent, then the conditions are satisfied by all mixtures in which such substance exceeds 30%. Under either condition, the mixture of the Burrage application satisfies count 2.

"Count 3 specifies that the melting point of the mixture is lower than the melting point of either constituent. The Law Examiner appears to have considered the word 'either' as ambiguous but we think the plain meaning of the claim is that the melting point of the mixture is lower than that of any one of its ingredients. Reading the Burrage mixture on the diagram we find that the 33⅓% to 66⅔% mixture would have a melting point of between 130°–140° which is less than that of either of the elements and Burrage can therefore make this claim.

"Count 4 specifies that the accelerating value of the mixture is approximately that of ditolylguanidine. According to Buchanan this is the case when the mixture is 'eutectic' or one in which the melting point is the lowest attainable in such mixtures.

"The specification of Buchanan specifies that the eutectic mixture corresponds to a mixture of equimolecular proportions of the two constituents and claim 6 of his patent covers such a mixture. There is nothing in the patent to indicate the range covered by the word "approximately" in count 4 but this count is clearly intended to include more than claim 6. The Burrage proportions of 33⅓% to 66⅔% appear to be near enough to the eutectic mixture, whose proportions are about 46⅔% to 54⅓%, to be covered by the language of this count.

"In his brief Buchanan contends that Burrage had altogether a different problem in mind and had no conception of the characteristics which Burrage stresses as important. This is not altogether true for the Burrage application sets forth on page 3, lines 21–31 the fact that the mixture will act at a lower temperature than the higher component, and on page 4, line 23–page 5, line 4, that proper combinations may be obtained whereby almost any reasonable speed of action without burning or discoloration, may be secured. His specification also refers to the fact that the mixture is cheaper than that of the higher priced ingredient.

"We are satisfied that all the counts are supported by the Burrage disclosure and the decision of the Examiner of Interferences awarding priority of invention to Albert C. Burrage, Jr., the senior party, is affirmed."

We agree with the conclusion reached by the Board of Appeals and the reasons assigned therefor, and its decision is affirmed.

Affirmed.